IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| In re: | D.C. APP. CIVIL NO. 10-59 |
| **JEFFREY J. PROSSER,** | Bankruptcy No. 06-30009 |
| Debtor. | Chapter 7 |
| _____/ | |
| **JAMES P. CARROLL**, Chapter 7 Trustee of the Estate of Jeffrey J. Prosser, | |
| Plaintiff/Appellee, | |
| v. | Adv. Pro. No. 10-3002 |
| **DAWN PROSSER,** | |
| Dawn Prosser/Appellant. | |
| _____/ | |

**TRUSTEE CARROLL'S RESPONSE AND OBJECTION
TO DAWN PROSSER'S SECOND "EMERGENCY" MOTION FOR STAY**

**I.   Summary of Argument**

For the second time in this Court since July 2010, and for the fourth time (including motions to the Third Circuit) in that same period, Dawn Prosser again incorrectly claims that a stay is required to prevent an imminent sale of real property pursuant to the Bankruptcy Court's Order authorizing such sale. The only substantive difference between this motion and its three predecessors (all of which have been denied) is that Dawn Prosser now inaccurately claims that Trustee Carroll's identification of a potential buyer for the subject property creates an exigency that did not previously exist. Contrary to the exigency portrayed by Dawn Prosser, the Bankruptcy Court currently has before it Trustee Carroll's Motion for Order Approving Bidding Procedures, which must be resolved before any sale can occur.

This latest motion should be denied because: (1) no property sale is imminent and,

specifically, the Bankruptcy Court order at issue requires Trustee Carroll to seek approval before any sale of the property can be consummated; thus no emergency exists; (2) Dawn Prosser refused the Bankruptcy Court's offer to entertain a motion to stay the order in question on the condition that she post a bond; and (3) the motion attacks the merits of a separate order addressing exemptions in the underlying bankruptcy, an issue that is on appeal to the District Court.  Dawn Prosser's motion should be denied for these reasons, and also because she otherwise cannot establish entitlement to a stay.

For these reasons, James P. Carroll ("Trustee Carroll"), the chapter 7 Trustee for the estate of Jeffrey J. Prosser (the "Debtor"), requests that the Court deny Dawn Prosser's latest motion for stay.

## II.  Relevant Procedural Background

### A.  The Bankruptcy Case

On February 10, 2006 (the "Petition Date"), Greenlight Capital Qualified, L.P., Greenlight Capital, L.P., and Greenlight Capital Offshore, L.P. (collectively, the "Greenlight Entities"), filed involuntary bankruptcy petitions against the Debtor, Emerging Communications, Inc. ("EmCom") and Innovative Communication Company, LLC ("ICC-LLC") under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.[1]

Prior to the entry of an Order for Relief on the involuntary petitions, on July 31, 2006, the Debtor, EmCom and ICC-LLC each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Division of the United States District Court for the United States Virgin Islands (the "Court").  Thereafter, the Court determined that it was the proper venue for the Debtor, EmCom and ICC-LLC's cases.

---

[1]  EmCom and ICC-LLC's estates are being jointly administered under the caption In re Innovative Comm. Co., LLC, Case No. 06-30008 (D.V.I. Bank. Div) (Fitzgerald, B.J.).

2

On February 13, 2007, the Bankruptcy Court entered a Memorandum Opinion and accompanying orders ordering the appointment of a chapter 11 trustee in the EmCom and ICC-LLC cases [Case. No. 06-bk-30009, DE 371 & 372; Case No. 06-bk-30008, DE 430]. Stan Springel ( "Trustee Springel"), was appointed chapter 11 trustee of the EmCom and ICC-LLC estates.

On October 3, 2007, the Bankruptcy Court entered an order (the "Conversion Order"), converting the Debtor's case from chapter 11 to chapter 7 [Case No. 06-bk-30009, DE 865], and John Ellis was appointed interim chapter 7 trustee of the Debtor's estate. On October 31, 2007, Mr. Ellis resigned as trustee and James P. Carroll ("Trustee Carroll") was appointed successor trustee.

On July 5, 2007, the Greenlight Entities filed an involuntary petition against Innovative Communication Corporation ("New ICC", (together with EmCom and ICC-LLC, the "Corporate Debtors"))[2]. An Order for Relief was entered against New ICC on September 21, 2007 [Adv. Pro. No. 07-ap-30012 DE 60], and Trustee Springel was subsequently appointed chapter 11 trustee of the New ICC estate.

**B.     The Palm Beach Property**

At the time of filing this bankruptcy case, the Debtor owned a number of pieces of luxury real estate together with Dawn Prosser, his non-debtor spouse, including a primary residence in St. Croix, and additional luxury estates in Palm Beach, Florida (the "Palm Beach Property"), and Lake Placid, New York. Petition for Writ of Mandamus, Record 1, Complaint[3], Ex. 4, p. 43, ¶ 1.[4]

---

[2] New ICC's case is pending before the Bankruptcy Court under case no. 07-30012 (Fitzgerald, B.J.).
[3] Record citations are to the record designated in this appeal at Dkt. No. 10.
[4] The facts cited herein are set forth in the complaint filed against Dawn Prosser in the Bankruptcy Court at Adversary No. 10-3002. Dawn Prosser did not answer the complaint.

The Palm Beach Property is a luxury home located in the prestigious "estate section" of Palm Beach, approximately one-half mile south of Worth Avenue, the internationally famous high-end retail shopping street, and one block south of the Everglades Golf Course. Id. at p. 44, ¶ 2. The property is worth in excess of $7.5 million. Id. The Debtor and Mrs. Prosser (collectively, the "Prossers") acquired title to the Palm Beach Property from New ICC on April 10, 2000. Id. at p. 47, ¶ 16.

For at least two years, the Debtor and Mrs. Prosser have enjoyed the property without paying monthly mortgage payments of approximately $27,559.28, annual taxes of approximately $125,000, or the costs of insuring the property. Id. at p. 44, ¶ 2. The value of the Palm Beach Property to the estate is rapidly diminishing with each day that the Debtor and Dawn Prosser are permitted to use it for free. Id.

The Prossers have occupied the Palm Beach Property since on or around December 14, 1999 when New ICC acquired title. Id. at p. 47, ¶ 17. They continue to occupy the house along with another luxury estate in St. Croix, which Debtor has maintained is his homestead and primary residence. Id.

After acquiring title, the Prossers jointly pledged the Palm Beach Property as collateral for a loan from Bank of America ("BOA"). Id. at ¶ 18. BOA asserts that it is currently owed approximately $4,813,355.16 in outstanding principal balance and approximately $616,481.79 in accrued interest, plus all other amounts provided for in the loan documents. Id. Both of the Prossers are jointly and severally responsible for the repayment of the loan from BOA. Id.

Despite being in bankruptcy since 2006, the Prossers have continued to enjoy the Palm Beach Property rent-free (in addition to their St. Croix property) for at least two years. Id. at ¶

19. In that time, they have not made any payments on the BOA mortgage, for insurance on the property, for property taxes, or for use and occupancy charges to the estate. Id. at p. 47-48, ¶ 19.

The estate is suffering as a result of the continued accrual of these costs against the Palm Beach Property while the Prossers live there. The Trustee estimates that the damages incurred are approximately $41,500 for each month that the property is not liquidated, which includes approximately $10,000 for taxes, $10,000 for insurance, and $21,500 in interest and penalties due BOA on its loan and mortgage. Id. at p. 48, ¶ 20.

The Palm Beach Property has significant value to the Debtor's estate even after the alleged BOA loan is deducted. Based upon consultation with Robert E. List Company, Inc., the Trustee's proposed sales agent, the Trustee believes the value of the Palm Beach Property to be not less than $7.5 million, and probably worth much more if marketed properly and effectively. Id. at ¶ 21.

### C. The Exemptions Trial

In his bankruptcy schedules, the Debtor claimed that the Palm Beach Property was exempt pursuant to Section 522(b)(3)(B) of the Bankruptcy Code [Case No. 06-bk-30009 DE 27, 359, 368, 1062 & 1226]. Thereafter, the Greenlight Entities [Case No. 06-bk-30009 DE 1143 & 1338], Trustee Springel [Case No. 06-bk-30009 DE 1178 & 1344], and Trustee Carroll [06-30009 DE 1343] each filed objections to the Debtor's claimed exemptions, including the exemption relating to the Palm Beach Property. The objectors argued, among other things, that the Debtor's wrongful conduct during the bankruptcy case required the Bankruptcy Court to deny him his exemptions.

The Bankruptcy Court held a twelve day trial on the exemption proceeding and, thereafter, on October 9, 2009, entered a Memorandum Decision and Order [06-30009, DE

2613] (the "Exemptions Order"), denying all of Debtor's claimed exemptions, including the exemption claimed on the Palm Beach Property. Among other things, the Bankruptcy Court found that the Debtor was not truthful on his schedules, hid assets, intentionally delayed the proceeding, failed to provide required information and generally abused the bankruptcy process. Id.

### D. Litigation to Recover Palm Beach Property as a Fraudulent Conveyance

On January 31, 2008, Trustee Springel commenced an adversary proceeding seeking to avoid the transfer of the Palm Beach Property from New ICC to the Prossers as a fraudulent conveyance. See Springel v. Dawn Prosser, et al., Adv. Pro. No. 08-3002 (Bankr. D.V.I. Jan. 31, 2008). The Petitioning Creditors and Trustee Carroll joined in the litigation asserting their own interests in the property.

Following Dawn Prosser's request for a jury trial and the withdrawal of the reference, on October 9, 2009, the Bankruptcy Court entered a "Memorandum Opinion, Report and Recommendations" recommending that the District Court enter an order on summary judgment in favor of Trustee Springel avoiding the transfer of the Palm Beach Property to the Prossers and returning it to the New ICC estate [Adv. Pro. No. 08-ap-3002, DE 212]. To date, the District Court has not acted with respect to the Bankruptcy Court's recommendation. Thus, the property continues to be titled in the names of the Debtor and Defendant, as husband and wife.

### E. The Adversary Proceeding To Sell The Palm Beach Property

On March 17, 2010, Trustee Carroll commenced the underlying adversary proceeding that forms the basis for the pending writ of mandamus, in order to obtain a judgment against Dawn Prosser under 11 U.S.C. § 363(h) and Bankruptcy Rule 7001(3), authorizing Trustee Carroll to sell the Defendant's interest in the Palm Beach Property along with the Debtor's

6

interest, subject to the Defendant's right of first refusal under 11 U.S.C. § 363(i) [Adv. Proc. No. 10-3002, DE 1].

The underlying adversary proceeding is intended to liquidate the Palm Beach Property in accordance with Trustee Carroll's duties. It is intended that the Palm Beach Property be sold and that the net proceeds of the sale of the Palm Beach Property be set aside and preserved in a segregated account either with the Bankruptcy Court, or an approved independent escrow agent, reserving any and all rights and claims of any parties, including Trustee Carroll, Dawn Prosser, Trustee Springel, and the Greenlight Entities. If this matter continues and the Prossers continue to occupy the property rent-free, Trustee Carroll believes that the equity in the home will be completely consumed and it will eventually lose its value entirely. It is improper to allow the Prossers the benefit of a second luxury home at the expense of the creditors of this estate and/or New ICC's estate.

Contemporaneously with the filing of the complaint, Trustee Carroll filed a motion for the expedited entry of an order granting summary judgment in his favor with respect to this complaint seeking authority to sell Dawn Prosser's interest in the Palm Beach Property subject to her rights of first refusal. Expedited relief was sought to ensure that the property could be marketed during the prime selling season. Dawn Prosser did not answer Trustee Carroll's complaint, and did not substantively respond to the motion.

On May 14, 2010, the Bankruptcy Court entered the Summary Judgment Order and Judgment. Record 17. The Summary Judgment Order does not immediately allow Trustee Carroll to consummate a sale of the Palm Beach Property, but rather only allows Trustee Carroll to market the property for sale and reserves for later determination whether the factors of 11 U.S.C. § 363(h) are satisfied with respect to an actual sale. Id., p. 7. More specifically, the

7

Bankruptcy Court directed Trustee Carroll to file a motion to sell the Palm Beach Property once he has marketed the property and secured a signed sales agreement from a prospective buyer and a specified earnest money deposit. Id. at p. 8, ¶ 7.

Following the entry of the Summary Judgment Order, Dawn Prosser filed an appeal of the Summary Judgment Order with the District Court and moved the Bankruptcy Court for a stay pending appeal. The Bankruptcy Court denied the motion, but indicated that it would grant a stay if Mrs. Prosser posted a bond of $1 million. Id., Ex. 8, p. 79-80, ¶ 5.

Dawn Prosser filed an initial "emergency" motion to stay in this case on July 26, 2010. Dkt. No. 6. Trustee Carroll opposed the motion. Dkt. No. 13. On September 22, 2010, Dawn Prosser filed a petition for writ of mandamus with the Third Circuit seeking the stay that the District Court had not granted. The case was docketed as Third Circuit No. 10-3807. On September 27, 2010, Dawn Prosser filed a motion to stay in the Third Circuit. In the meantime, on November 8, 2010, Dawn Prosser filed the present second "emergency" motion for stay in the District Court. Dkt. No. 21.

On November 15, 2010, Dawn Prosser filed an emergency motion for stay in the Third Circuit that essentially sought expedited consideration of her September 27 motion for stay before the Third Circuit. On November 17, 2010, the Third Circuit entered orders denying Dawn Prosser's motion for stay and petition for writ of mandamus.

The only evidentiary difference between the present motion and its predecessors is the November 3, 2010 notice to counsel on behalf of Trustee Carroll (attached to Dawn Prosser's present motion). The letter simply notifies counsel that Trustee Carroll has entered into a contract for the sale of the Palm Beach Property, and that the sale is subject to higher and better offers and the Bankruptcy Court's approval as described in the Summary Judgment Order.

On December 9, 2010, Trustee Carroll filed a Expedited Motion for Order Approving Bidding Procedures and Setting Certain Dates in Connection with Sale of Residential Real Property Located at 252 El Bravo Way, Palm Beach, Florida 33480 (DE 3064), which motion must be resolved before a sale can occur.

### III. Argument

The four factors considered by a court in ruling on a motion for stay pending appeal are well known. The include: (1) whether the movant is likely to succeed on the merits of the appeal; (2) whether the movant will suffer irreparable injury if a stay is not granted; (3) whether a stay would substantially harm other parties in the litigation; and (4) whether a stay is in the public interest." (In re Howard) Bohm v. Howard, 422 B.R. 593, 597 (Bankr. W.D. Pa. 2010) (citation omitted); see also Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991). In making a determination on these four factors, "the Court is to balance each of the factors at issue and examine individualized considerations relevant to the case." Bohm, 422 B.R. at 597; see also Republic of the Philippines, 949 F.2d at 658 ("we will proceed to analyze each of the four factors enunciated by the Supreme Court in light of the individualized considerations relevant here"). The party seeking the stay "bears the burden of proof on these factors by a preponderance of the evidence." In re Countrywide Home Loans, Inc., 387 B.R. 467, 471 (Bankr. W.D. Pa. 2008). After consideration of each of these four factors, it is clear that Dawn Prosser is not entitled to a stay.

### A. Dawn Prosser Cannot Establish Irreparable Injury Absent a Stay

This Court need does not even need to consider whether Mrs. Prosser is likely to succeed on the merits of her appeal, as she cannot show that she will suffer irreparable injury in the absence of a stay. The crux of Mrs. Prosser's argument is that she will suffer irreparable injury if a sale of the Palm Beach Property is consummated during the pendency of the appeal.

In fact, Mrs. Prosser has mischaracterized the Summary Judgment Order entered by the Bankruptcy Court. She suggests that that the Summary Judgment Order allows for a sale without further action by Trustee Carroll or approval from the Bankruptcy Court. It does not, and the November 3, 2010 letter attached to the current motion does not change this. The Bankruptcy Court's Order permits only the marketing of the Palm Beach Property for sale, and requires Trustee Carroll to seek further Court approval at the time a buyer is obtained. Petition for Writ of Mandamus, DE 1, Ex. 1, p. 7-8, ¶¶ 4-5. Indeed, in denying Mrs. Prosser's motion for stay pending appeal, the Bankruptcy Court noted:

> This is not a motion by the estate to sell the Palm Beach property. Rather, it is a determination that the Trustee can begin a marketing effort that include both the estate's interest in the property as well as the alleged co-owner's (i.e., Mrs. Prosser's) interest.

Writ of Mandamus, DE 1, Ex. 8, p. 162.

Thus, it is clear that Mrs. Prosser will not suffer irreparable injury if a stay is not issued during the pendency of the appeal. Rather, the Bankruptcy Court will review and consider the proposed transaction before the sale proceeds. On that basis alone, the instant motion should be denied.

### B.   Dawn Prosser is Not Likely to Succeed on the Merits

Even if the Court determines that Mrs. Prosser will suffer irreparable injury in the absence of a stay pending appeal, she has failed to demonstrate a likelihood of success on the merits of her appeal.

>    i)    **<u>Trustee Carroll Can Sell the Palm Beach Property Free and Clear of Defendant's Interest Pursuant to 11 U.S.C. § 363(h); The Entireties Exemption Was Properly Denied and Summary Judgment Is Appropriate</u>**

The Debtor claimed that his interest in the Palm Beach Property is exempt, and thus, outside the reach of Trustee Carroll and the Debtor's creditors, pursuant to Section 522(b)(2)(B) of the Bankruptcy Code and Florida common law. However, all of the Debtor's exemptions, including that claimed on the Palm Beach Property, were denied by the Bankruptcy Court in the Exemptions Order. Case No. 06-bk-30009, DE 2613, p. 72. That Order is on appeal to the District Court (App. No. 09-147) and there has not been a stay entered as to that Order.

Presently, therefore, the Palm Beach Property is not subject to any exemptions. As such, the Trustee has the right and, indeed, the duty, to liquidate the asset through a bankruptcy sale. Mrs. Prosser's attempt to challenge the Exemptions Order through this proceeding should be rejected.

Indeed, the entireties exemption claimed by the Debtor in inapplicable in any event. Under Florida law, an entireties property is not immune from execution where at least one creditor holds a joint debt against Mr. and Mrs. Prosser. <u>Grant v. Himmelstein, (In re Himmelstein)</u>, 203 B.R. 1009, 1012 (Bankr. M.D. Fla. 1996) (citing <u>Kosto v. Lausch (In re Lausch)</u>, 16 Bankr. 162, 165 (M.D. Fla. 1981) ("Under Florida law, an interest in a property held as tenants by the entireties is a legal or equitable interest as required by 11 U.S.C. § 541."))). Thus, in Florida, entireties property is exempt for the purposes of satisfying debts owed to individual creditors of either spouse; however, "entireties property is not exempt from process to satisfy joint debts of both spouses" under Section 522(b)(3)(B) of the Bankruptcy Code. <u>In re Monzon</u>, 214 B.R. 38, 41 (Bankr. S.D. Fla. 1997) (emphasis added).

Accordingly, any interest in real property that the Debtor holds with a spouse as tenancy by the entirety is subject to administration by a trustee if a joint debt exists between the spouses:

> To the extent that the debtor and his spouse were jointly liable on debts at the time of the filing of the petition to creditors who could have levied on the entireties property pursuant to Florida law, the Court holds that all property in which the debtor has an interest in as a tenant by the entireties is declared to be property of the estate and subject to administration by the trustee under § 363(h) of the Bankruptcy Code.

In re Kimmel, 131 B.R. 223, 228 (Bankr. S.D. Fla. 1991). See also In re Amici, 99 B.R. 100, 103 (Bankr. M.D. Fla. 1989); In re Schwartz, 362 B.R. 532, 535 (Bankr. S.D. Fla. 2007); Beal Bank v. Almand and Assoc., 780 So. 2d 45, 53 (Fla. 2001).

In this case, after the Debtor caused New ICC to transfer the Palm Beach Property to the Debtor and Mrs. Prosser, they took out a loan on that property. Petition for Writ of Mandamus, Ex. 4, p. 47, ¶ 18. Presently, title to the Palm Beach Property is held in both Mr. and Mrs. Prosser's name and they are co-obligors on a mortgage loan from Bank of America in the amount of approximately $5 million, that is secured by the Palm Beach Property. Id. Moreover, there are amounts presently owing on that mortage loan. Id. Accordingly, because Bank of America holds a joint debt against Mr. and Mrs. Prosser, the entireties exemption on the Palm Beach Property does not apply.

> ii)  **The Bankruptcy Court Correctly Granted Summary Judgment As To 11 U.S.C. § 363(h)(1) And (h)(2).**

Section 363(h) of the Bankruptcy Code provides as follows:

Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –

(1)   partition in kind of such property among the estate and such co-owners is

impracticable;

(2)     sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3)     the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4)     such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).  Section 363(h) allows the Trustee to sell property owned in a tenancy by the entireties provided the requirements therein are met.  Geddes v. Livingston (In re Livingston), 804 F.2d 1219, 1223 (11th Cir. 1986); Brown v. Phillips (In re Phillips), 379 B.R. 765, 795 (Bankr. N.D.Ill. 2007).  The requirements of Sections 363(h)(1) and (2) are easily met in this case.[5]

The Palm Beach Property is a single family residence.  Petition for Writ of Mandamus, DE 1, Ex. 4, p. 47, ¶ 14.  Courts agree that where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds.  Neylon v. Addario (In re Addario), 53 B.R. 335, 338 (Bankr. D. Mass.); Bakst v. Griffin (In re Griffin), 123 B.R. 933, 935 (Bankr. S.D.Fla. 1991) (citing Morris v. Ivey (In re Ivey), 10 B.R. 230 (Bankr. N.D.Ga. 1981)) ("[P]artition of [a] marital home is impracticable; no buyer is likely to purchase a partial interest in a residence where others live.").  The Bankruptcy Court thus correctly found that partition is impracticable under Section 363(h)(1).

As to Section 363(h)(2), it is both logical and generally accepted by courts that the sale of a bankruptcy estate's undivided interest will generate substantially less than the sale free of each

---

[5] The Bankruptcy Court postponed until a hearing is held on a proposed sale to an actual buyer the determination of whether the benefit to the estate of the sale of the Palm Beach Property free of Dawn Prosser's interests outweighs any detriment to her under 11 U.S.C. § 363(h)(3). Finally, there is no issue on appeal that the Palm Beach Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power under 11 U.S.C. § 363(h)(4).

13

owner's interest, because of the chilling effect that the sale of the undivided interest has on prospective purchasers of the property. Maxwell v. Barounis (In re Swiontek), 376 B.R. 851, 866 (Bankr. N.D.Ill. 2007) (court took judicial notice that a sale of the estate's undivided one-half interest would realize substantially less than a sale of the property free of the interest of the co-owner); Bakst v. Griffin, 123 B.R. at 935-36; Brown v. Phillips, 379 B.R. at 796 (court took judicial notice of the "economic reality"). The Bankruptcy Court thus correctly found that a sale free and clear of Dawn Prosser's interest was appropriate under Section 363(h)(2).

### C. The Balance of Harms and Public Interest Weigh Against a Stay

The minimal harm that Mrs. Prosser may suffer if a stay pending appeal is not issued is substantially outweighed by the harm to the estate. The Prossers have continued to live in the Palm Beach Property while not paying the mortgage, taxes or maintenance for several years. With each passing month, any remaining equity in the property is being consumed.

Moreover, the public interest does not favor the issuance of a stay pending appeal in this instance. There is a strong public interest in the prompt resolution of bankruptcy cases. A stay in this case will only serve to delay the Trustee in closing out the bankruptcy case.

### D. Dawn Prosser Waived Her Opportunity To Obtain A Stay By Refusing To Post a Bond.

Should this Court opt to grant the requested stay, Federal Rules of Appellate Procedure 7 and 8(a)(2)(E) afford discretion to require that the appellant post a bond or provide other security. The purpose, of course, is to provide the appellee a measure of security against costs on appeal and to preserve an appellee's ability to recover on the appellant's liability.

The Bankruptcy Court offered to stay the Summary Judgment Order if Dawn Prosser were to post a $1 million bond. Mrs. Prosser refused, and instead proceeded to file an appeal with the District Court and, thereafter, a writ of mandamus to this Court.

Mrs. Prosser suggests that she should be excused from posting a bond because she cannot afford to procure one. Although there is nothing in the record to support such a statement by Mrs. Prosser, the fact is that financial difficulty, taken alone, is not a valid basis to obtain a stay without a bond. As has been said in the context of a supersedeas bond at the district court level, the discretion to require no bond or only a partial bond is exercised only in "extraordinary circumstances" and only where alternative means of securing the judgment creditor's interest are available. Bank of Nova Scotia v. Pemberton, 964 F.Supp. 189, 192 (D.V.I. 1997). Unless Dawn Prosser can post a bond commensurate with the potential lost opportunities and additional costs associated with a delayed execution of the Summary Judgment Order, she is not entitled to a stay.

### E.     Dawn Prosser's Reliance On Northern Pipeline is Misplaced

Dawn Prosser argues that the Bankruptcy Court's actions are at odds with the Supreme Court's decision in Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). The decision in Northern Pipeline does not apply to the instant case for two reasons.

First, Northern Pipeline merely stands for the proposition that Bankruptcy Court must follow the "report and recommendation" procedure for non-core proceedings. Id. Conversely, the Bankruptcy Court always retains jurisdiction to act in core proceedings, and, more importantly, orders approving the sale of property are quintessentially "core" under 28 U.S.C. § 157(b)(2)(N).

Second, the Summary Judgment Order merely allows Trustee Carroll to market the Palm Beach Property. The Bankruptcy Court expressly reserved for a future hearing—after a potential buyer is found—the determination of whether the remaining Section 363(h) factors are established for the purpose of consummating an actual sale of the Palm Beach Property. In short, the Northern Pipeline decision is simply inapposite.

15

## IV. Conclusion

The Prossers have and continue to live in the Palm Beach Property without paying a dime to cover the carrying costs, estimated at over $41,500 per month. Nonetheless, Mrs. Prosser seeks to stay any efforts of the Trustee to market and eventually sell the property, all the while allowing any equity in the property to be eaten up.

Because Mrs. Prosser cannot establish irreparable injury in the absence of a stay pending appeal, her motion should be denied at the outset. Moreover, Mrs. Prosser has failed to establish a likelihood of success on the merits of her appeal; the Trustee has the right and duty to attempt to liquidate non-exempt assets pursuant to Section 363 of the Bankruptcy Code. Finally, if the Court is inclined to grant a stay, it should make such a stay contingent upon the posting of a substantial bond or other security.

Date: December 9, 2010

Respectfully submitted,

/s/ Samuel H. Israel
Samuel H. Israel
Eric E. Reed
Fox Rothschild LLP
2000 Market Street, 20th Floor
Telephone: (215) 299-2000
Facsimile: (215) 299-2150
Email: sisrael@foxrothschild.com

Attorneys for James P. Carroll, Chapter 7 Trustee of the Estate of Jeffrey J. Prosser

**CERTIFICATE OF SERVICE**

I certify that on December 9, 2010, a copy of the foregoing was filed using the Court's ECF system which will provide notice and a copy to the following:

Michaela C. Crocker
Vinson & Elkins L.L.P.
Dallas, TX 75201-2975
214-220-7787
214-999-7787 (fax)
mcrocker@velaw.com

Jeffrey B.C. Moorhead
Jeffrey B.C. Moorhead, P.C.
CRT Brow Building
1132 King Street Ste. 3
St. Croix, VI  00820
340-773-2539
340-773-8659 (fax)
jeffreymlaw@yahoo.com


/s/ Samuel H. Israel